■ Don Liyanage, Respondent, v Laura Amann, Appellant. [8 NYS3d 390]—

In an action, inter alia, to recover damages for dental mal-

practice, the defendant appeals from a judgment of the Supreme Court, Richmond County (Marin, J.), dated August 28, 2012, which, upon a jury verdict on the issue of liability finding her at fault for the plaintiff's injuries, and upon a separate jury verdict on the issue of damages finding that the plaintiff sustained damages in the principal sums of $30,000 for past pain and suffering and $400,000 for future pain and suffering, and upon an order of the same court dated May 1, 2012, denying her motion pursuant to CPLR 4404 (a), inter alia, to set aside the verdict on the issue of liability and for judgment as a matter of law dismissing the complaint or, in the alternative, to set aside the verdict on the issue of liability as contrary to the weight of the evidence and for a new trial, is in favor of the plaintiff and against her in the principal sum of $430,000.

Ordered that the judgment is reversed, on the facts, with costs, that branch of the defendant's motion which was to set aside the jury verdict on the issue of liability as contrary to the weight of the evidence is granted, the order dated May 1, 2012, is modified accordingly, and the matter is remitted to the Supreme Court, Richmond County, for a new trial on the issues of liability and damages in accordance herewith.

On January 16, 2008, the plaintiff went to the emergency room of Richmond University Hospital (hereinafter the hospital) complaining of a fever, cough, chest pain, and nasal congestion. A routine chest X ray revealed the presence of a metallic object in the plaintiff's left lower lung which, upon further tests, including several CT scans, "appear[ed] to be a medical device."

The plaintiff commenced this action against the defendant, Dr. Laura Amann, who was his treating dentist from April 1, 2006, through February 2, 2008. The plaintiff alleged that, while performing a diagnostic procedure, the defendant had negligently broken the instrument she was using, causing its metal tip, or burr, to fall into his mouth, as a result of which he aspirated the burr into his left lung. Prior to coming under the defendant's care, the plaintiff received dental treatment from a dentist at nonparty Eldridge Dental (hereinafter Eldridge), where his last visit was on April 14, 2005.

The jury found that a piece of a dental instrument went into the plaintiff's lung during his course of treatment by the defendant, that the defendant departed from accepted dental practice resulting in that piece going into the plaintiff's lung, and also departed by failing to monitor or diagnose the plaintiff's condition or advise him, and that those departures were substantial factors in causing the plaintiff's injuries.

"The requisite elements of proof in a dental malpractice action are a deviation or departure from accepted standards of dental practice, and that such departure was a proximate cause of the plaintiff's injuries" (*McGuigan v Centereach Mgt. Group, Inc.*, 94 AD3d 955, 956 [2012]; *see Kozlowski v Oana*, 102 AD3d 751, 752 [2013]; *Zito v Jastremski*, 84 AD3d 1069, 1070 [2011]).

It is not disputed that allowing a burr to come off in a patient's mouth and failing to retrieve it, or to immediately take steps to retrieve it, would constitute a departure from accepted dental practice. The sole issue here is whether the departure occurred while the defendant was treating the plaintiff, or while the plaintiff's previous dental provider, Eldridge, was treating him.

"A motion for judgment as a matter of law pursuant to CPLR 4404 may be granted only when the trial court determines that, upon the evidence presented, there is no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury upon the evidence presented at trial, and no rational process by which the jury could find in favor of the nonmoving party" (*Messina v Staten Is. Univ. Hosp.*, 121 AD3d 867, 867 [2014] [citation, ellipsis and internal quotation marks omitted]; *see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Flynn v Elrac, Inc.*, 98 AD3d 938, 939 [2012]; *Tapia v Dattco, Inc.*, 32 AD3d 842, 844 [2006]). " 'Where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury' " (*Bernstein v City of New York*, 69 NY2d 1020, 1021-1022 [1987], quoting *Ingersoll v Liberty Bank of Buffalo*, 278 NY 1, 7 [1938]; *see Schneider v Kings Hwy. Hosp. Ctr.*, 67 NY2d 743, 745 [1986]; *McNally v Sabban*, 32 AD3d 340, 341 [2006]; *Lynn v Lynn*, 216 AD2d 194, 195 [1995]). "Plaintiff need not refute remote possibilities; it is enough for plaintiff to show facts and conditions from which the negligence of defendant may be reasonably inferred" (*Bernstein v City of New York*, 69 NY2d at 1022; *see Negri v Stop & Shop*, 65 NY2d 625, 626 [1985]; *Spett v President Monroe Bldg. & Mfg. Corp.*, 19 NY2d 203, 205 [1967]; *Dillon v Rockaway Beach Hosp.*, 284 NY 176, 179 [1940]).

The plaintiff testified that, sometime mid-2007, while undergoing some "kind of a cleaning" procedure performed by the defendant, he overheard an exchange between the defendant and her assistant about an instrument needing to be

replaced because it had broken. According to the plaintiff, after the instrument was replaced and the defendant resumed working on him, he felt something stuck in his throat and could not breathe, until the defendant punched him on the back, and whatever it was became dislodged, and his regular breathing was restored. This testimony, which "was not so manifestly untrue, physically impossible, or contrary to common experience as to render it incredible as a matter of law" (*Munoz v City of New York*, 55 AD3d 697, 697 [2008]; *see Ahr v Karolewski*, 48 AD3d 719 [2008]; cf. *Loughlin v City of New York*, 186 AD2d 176, 177 [1992]), together with the plaintiff's testimony that nothing of significance ever occurred during the period he was treated by Eldridge, was sufficient, when "viewed in the light most favorable to plaintiff," to enable the jury to conclude, "based on more than mere speculation or guesswork" (*Bernstein v City of New York*, 69 NY2d at 1021, 1022), that the injury was caused by the defendant, rather than by an employee of Eldridge.

However, we further find that, when we consider the testimony together with the conflicting evidence, including the plaintiff's own testimony that, at the time he learned of the burr's presence in his lungs, he had no idea of how it had come to be there, and his failure to mention, until more than one year after this action was commenced, the incident during his many visits to the pulmonary specialist, who did not appear at trial and with respect to whom the jury was given a missing witness charge, the evidence "so preponderated in favor of the defendant that the jury could not have reached the verdict by any fair interpretation of the evidence" (*Acosta v City of New York*, 84 AD3d 706, 708 [2011]; *see Lolik v Big v Supermarkets*, 86 NY2d 744, 746 [1995]; *Nicastro v Park*, 113 AD2d 129, 134 [1985]; *O'Boyle v Avis Rent-A-Car Sys.*, 78 AD2d 431, 439 [1981]).

Accordingly, the Supreme Court should have granted that branch of the defendant's motion which was to set aside the verdict on the issue of liability as contrary to the weight of the evidence, and we remit the matter for a new trial. Under the circumstances of this case, the new trial should encompass the issues of liability and damages. Rivera, J.P., Chambers, Miller and Duffy, JJ., concur.